2022 IL App (2d) 210676
No. 2-21-0676
Opinion filed April 11, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| *In re* D.A., a Minor | ) | Appeal from the Circuit Court |
| | ) | of McHenry County. |
| | ) | |
| | ) | No. 20-JA-124 |
| | ) | |
| (The People of the State of Illinois, | ) | Honorable |
| Petitioner-Appellee, v. Emilie G. | ) | Christopher Harmon, |
| Respondent-Appellant). | ) | Judge, Presiding. |

_____

JUSTICE McLAREN delivered the judgment of the court, with opinion.
Justices Schostok and Birkett concurred in the judgment and opinion.

**OPINION**

¶ 1    D.A., a minor, was adjudicated neglected due to an environment injurious to his welfare.

705 ILCS 405/2-3(1)(b) (West 2020). At the dispositional hearing, his mother, Emilie G.,

respondent, was found unfit, and D.A. was placed under the guardianship and custody of the

Department of Child and Family Services (DCFS). Respondent appeals from the adjudication of

neglect. For the reasons that follow, we reverse.

¶ 2                                    I. BACKGROUND

¶ 3    Respondent is the biological mother of D.A., born November 25, 2020. D.A. was

discharged from the hospital and released directly to respondent's care. Six days after his birth,

DCFS took protective custody of D.A. On December 1, 2020, the State filed a neglect petition,

alleging that D.A.'s environment was injurious to his welfare. The petition contained several

allegations relating to D.A., including that he tested positive for tetrahydrocannabinol (THC) at birth and numerous paragraphs of past events and adjudications involving respondent's previous children.[1] Based upon the parents' stipulation "for today's purposes only," temporary custody was given to DCFS, with supervised visitation given to the parents. D.A.'s biological father died in May 2021, five months before the September 1 and 17, 2021, adjudication hearing.

¶ 4    Respondent did not appear at the adjudication hearing, and the court denied her counsel's oral motion to continue the hearing. At the hearing, three exhibits relating to respondent's prior involvement with DCFS and one exhibit relating to D.A. were admitted. The court also took judicial notice of an additional exhibit of associated court filings, not for their relevance but "for the weight they are to be afforded." The State presented one witness, caseworker Phylicia D. Ranes, to introduce the exhibits. Ranes's examination, primarily by the guardian *ad litem* and defense counsel, elicited the following. The case was brought to DCFS because of reports that (1) respondent had six previous children who were removed from her care and (2) D.A. had tested positive for THC at birth. When Ranes visited unannounced on November 30, 2020, she was aware that D.A. had been born on November 25, 2020. D.A. was in the home and appeared healthy. The parents were living at Bob's Motel, in the "manager's suite," consisting of two rooms. The officers who were with Ranes reported that the motel was infested with bed bugs. Ranes found that the residence was clean, but "there were certain kinds of concerns, like they had the baby's bouncer next to a dresser that had a hatchet on top of it." D.A. was not in the baby bouncer.

---

[1] The State's petition refers to "six previous children." The DCFS files admitted at the hearing concerned three of respondent's children and included a reporter's reference to three earlier children who were not raised by respondent.

¶ 5 Ranes testified that although THC is legal, there *"really is not enough evidence to show how it affects babies."* The reason that Ranes was given for why D.A. had THC in his system at birth was that both parents had been reportedly using marijuana daily. She also spoke with respondent about her marijuana use. She believed that there was one other child of respondent who tested positive for an "illicit"[2] substance at birth.

¶ 6 The State's exhibit number 4 was the DCFS file and indicated report for D.A. According to the file, when Ranes visited on November 30, 2020, respondent told her that she and D.A.'s father had just returned from the pediatrician's office, where the doctor had reported that D.A. was healthy but needed another check up on December 2, 2020, because he had lost "a little bit of weight." Subsequently, Ranes telephoned the pediatrician's office and verified that D.A. was last seen on December 2 for a weight check, was seen before that on November 30, and was scheduled for another weight check on December 9. On November 30, 2020, Ranes also took D.A. to see a different doctor, who confirmed that there were no concerns. On December 4, 2020, respondent contacted Ranes regarding future scheduled pediatrician appointments and asked if she could attend them with D.A.'s paternal grandmother, who was supervising respondent's visits. She was permitted to do so.

¶ 7 Exhibit number 4 also included reports that (1) respondent had posted on social media a photo of her lip that was swollen due to an altercation with D.A.'s father and (2) there were "large bottles of alcohol on display" in the residence.

¶ 8 The State's exhibit numbers 1 through 3 consisted of DCFS files on three children born to respondent between 2015 and 2018. All of those children were removed from respondent's custody

---

[2] Marijuana is no longer illicit *per se*.

and care due to a variety of concerns, including respondent's substance abuse, engagement in domestic violence, unstable mental health, and noncompliance with recommended services.

¶ 9    The State rested. Respondent's motion for a directed finding was denied, and she presented no evidence. The court determined that the State had proven by a preponderance of the evidence that D.A. was currently neglected because his environment is injurious to his welfare and that he was anticipatorily neglected based upon the previous juvenile abuse and neglect findings relating to his siblings.

¶ 10                              II. ANALYSIS

¶ 11    Preliminarily, we address the State's motion to strike portions of respondent's statement of facts for noncompliance with Illinois Supreme Court Rule 341(h)(6) (eff. Oct. 1, 2020) (requiring that a statement of facts be stated accurately and fairly "without argument or comment"). The State fails to identify any facts that respondent "misstates" or "eludes." To the extent respondent's statement of facts includes argument and comment, we decline to strike any noncompliant portions, as our review is not hindered. *Holten v. Syncreon North America, Inc.*, 2019 IL App (2d) 180537, ¶ 24.

¶ 12    Respondent argues that the trial court's finding that D.A. was a neglected minor is against the manifest weight of evidence. Specifically, respondent asserts that the State failed to establish that D.A.'s environment is injurious due to respondent's drug use and failed to prove anticipatory neglect based on prior findings of neglect concerning her other children.

¶ 13    The Juvenile Court Act of 1987 (Act) (705 ILCS 405/1-1 *et seq.* (West 2020)) sets forth a two-stage process for the determination of whether a child should be removed from his or her parents' custody and made a ward of the court. *In re A.P.*, 2012 IL 113875, ¶ 18. Initially, the State has the burden of proving by a preponderance of the evidence that the child is abused, neglected,

or dependent. 705 ILCS 405/2-18(1) (West 2020); *A.P.*, 2012 IL 113875, ¶ 19. "[T]he only question to be resolved at an adjudicatory hearing is whether or not a child is neglected, and not whether [a] parent is neglectful ***." *In re Arthur H.*, 212 Ill. 2d 441, 467 (2004). If the trial court determines that the child is abused, neglected, or dependent, the trial court then moves to a dispositional hearing to consider whether it is consistent with the health, safety, and best interests of the minor and the public that the minor be made a ward of the court. 705 ILCS 405/2-21(2) (West 2020). At this point, the trial court may consider the acts and/or omissions of the parents. *Arthur H.*, 212 Ill. 2d at 466.

¶ 14     A neglected minor includes "any minor under 18 years of age *** whose environment is injurious to his or her welfare." 705 ILCS 405/2-3(1)(b) (West 2020). Cases involving an adjudication of neglect and wardship are *sui generis*, and each case must ultimately be decided on the basis of its own particular facts. *Arthur H.*, 212 Ill. 2d at 441. At an adjudicatory hearing, the State bears the burden of proving its allegations of neglect by a preponderance of the evidence. *In re S.S.*, 313 Ill. App. 3d 121, 126 (2000). A preponderance of the evidence is that amount of evidence that "leads a trier of fact to find that the fact at issue is more probable than not." (Internal quotation marks omitted.) *Id.* at 126-27. We will not reverse a trial court's finding of neglect based on an injurious environment unless the finding is against the manifest weight of the evidence. *In re Ivan H.*, 382 Ill. App. 3d 1093, 1101 (2008). A finding is against the manifest weight of the evidence if the opposite conclusion is clearly evident or the determination is unreasonable, arbitrary, or not based on the presented evidence. *In re D.F.*, 201 Ill. 2d 476, 498 (2002).

¶ 15     Here, we do not believe that the State established at the adjudicatory hearing that D.A. was a neglected minor by a preponderance of the evidence. The State's allegation that D.A. testified positive for THC at birth was based on respondent's admitted "almost daily" use of cannabis and

her reported statement that "the only thing that showed" on D.A.'s drug test "was pot." The State presented no medical confirmation that D.A. was born with THC in his system nor any evidence as to what amount of THC, if any, was in his system at birth. The State concedes that THC in the blood is not illegal, and Ranes further stated that there "*really is not enough evidence to show how [THC] affects babies*." (Emphasis added.) D.A. was discharged from the hospital directly to respondent's care. Follow-up examinations by at least two pediatricians, one of which was selected by DCFS, revealed no concerns. In short, the State did not meet its burden of proving that D.A. was born with THC in his system or that the use of marijuana during pregnancy poses risks to the unborn child. There might come a day when it is established that any level of THC found in a child's system might constitute neglect, but that has not been established here.

¶ 16    The trial court appeared to invoke section 2-18(2)(f) of the Act to support its conclusion that the environment was injurious to D.A.'s welfare. Under section 2-18(2)(f), proof that a parent repeatedly used a drug to the extent that it would ordinarily produce "a substantial state of stupor, unconsciousness, intoxication, hallucination, disorientation or incompetence, or a substantial impairment of judgment, or a substantial manifestation of irrationality, shall be *prima facie* evidence of neglect." 705 ILCS 405/2-18(2)(f) (West 2020). No evidence was offered at the adjudicatory hearing to show that respondent's current use of cannabis produced any condition described in section 2-18(2)(f). Additionally, in her investigative report, Ranes stated that she observed no drug paraphernalia or medicine in the residence.

¶ 17    The State further alleged that Bob's Motel was "facing multiple health, fire, and building code violations." This phrase also appears in the history and investigation report regarding D.A. The only evidence to support this claim was Ranes's hearsay testimony that the police officers who were with her at the motel "reported that the motel was infested with bed bugs." Tellingly,

there was no evidence that D.A. (or anyone else) was bitten by a bed bug, and Ranes further testified that she found the home to be clean.

¶ 18   Finally, concerning current neglect, the State alleged the existence of a substantial risk of physical injury by respondent or another. See *id.* § 2-3(2)(ii). Ranes testified that she observed a "hatchet" on a dresser in proximity to D.A.'s empty baby bouncer. In a contact note, she reported seeing "large bottles of alcohol on display." The trial court, however, found that the State failed to prove its section 2-3(2)(ii) allegation.

¶ 19   The remainder of the State's case is alleged under a theory of anticipatory neglect based upon factual allegations of past events and adjudications involving respondent's previous children. Exhibits relating to this history were admitted at the adjudicatory hearing. See *Arthur H.*, 212 Ill. 2d at 468 stating that section 2-18(3) of the Act (705 ILCS 405/2-18(3) (West 2000)) "provides that the proof of neglect of one minor 'shall be admissible evidence' on the issue of the neglect of any other minor for whom the parent is responsible"); *Cf. In re Z.J.*, 2020 IL App (2d) 190824, ¶ 72 (holding that "the trial court was entitled to consider the exhibits [(in that case, DCFS service plans)] and attribute to them whatever weight they were due, taking into account their hearsay nature"). The trial court also took judicial notice of the previous court cases involving D.A's siblings, not for their relevance but "for the weight they are to be afforded."

¶ 20   Where the allegations of abuse or neglect are premised upon a theory of anticipatory neglect, the State seeks to protect children "who have a probability to be subject to neglect or abuse because they reside, or in the future may reside, with an individual who has been found to have neglected or abused another child." *Arthur H.*, 212 Ill. 2d at 468. Although Illinois courts recognize the theory of anticipatory neglect, there is no *per se* rule that evidence of neglect of one child conclusively establishes neglect of another child. *Id.* (evidence of the neglect of one minor for

whom the parent is responsible, although admissible, "does not constitute conclusive proof of the neglect of another minor"). "Rather, 'such neglect should be measured not only by the circumstances surrounding the sibling, but also by the care and condition of the child in question.' " *Id.* (quoting *In re Edward T.*, 343 Ill. App. 3d 778, 797 (2003)); see also *In re Jordyn L.*, 2016 IL App (1st) 150956, ¶ 35 ("even under anticipatory neglect, neglect or abuse to a sibling becomes incredibly less important than what is occurring with, and to, the specific minor in question, who is to be the central focus"); *In re Harriett L.-B.*, 2016 IL App (1st) 152034, ¶ 23 ("the key *** is what was occurring with, and to, the specific minor at issue in the petition").

¶ 21 The State asserts that the evidence of D.A.'s neglect, combined with the evidence that his siblings were neglected, validates the adjudication in this case. The State does not argue that even if the specific minor at issue has not been shown to be neglected, the neglect of his siblings is sufficient to adjudicate him neglected. We determine that the evidence presented regarding D.A. showed that he was not a neglected minor but, rather, was cared for and healthy. We further believe that sufficient time has passed to call into question the connection between prior findings of neglected minors and the trial court's finding here. See, *e.g.*, *In re Edricka C.*, 276 Ill. App. 3d 18, 31 (1995) (where incidents of abuse and neglect occurred years before the minor was born, and he was not abused or neglected, the trial court's finding came "too close to a *per se* rule of anticipatory neglect"). Accordingly, we decline to extend the doctrine of anticipatory negligence to the scenario in this case.

¶ 22 Finally, the State contends that we should affirm the dispositional order making D.A. a ward of the court. However, a "finding of abuse, neglect or dependence is jurisdictional, without [which] the trial court lacks jurisdiction to proceed to an adjudication of wardship." (Internal quotation marks omitted.) *Arthur H.*, 212 Ill. 2d at 464. Because we hold that the State failed to

prove its allegations of D.A.'s neglect, the judgment of the circuit court is reversed and the petition for adjudication of wardship is dismissed. See *id.* We note that "section 8.4 of the Abused and Neglected Child Reporting Act (325 ILCS 5/8.4 (West 1994)) requires that DCFS 'provide or arrange for and monitor *** rehabilitative services for children and their families on a voluntary basis or *under a final or intermediate order of the Court*.' " (Emphasis in original.) *In re Lawrence M.*, 172 Ill. 2d 523, 528 (1996).

¶ 23                                    III. CONCLUSION

¶ 24    For the above reasons, we reverse the judgment of the circuit court of McHenry County.

¶ 25    Reversed.

**No. 2-21-0676**

| | |
|---|---|
| **Cite as:** | *In re D.A.*, 2022 IL App (2d) 210676 |
| **Decision Under Review:** | Appeal from the Circuit Court of McHenry County, No. 2-JA-124; the Hon. Christopher Harmon, Judge, presiding. |
| **Attorneys for Appellant:** | Renee A. Buxton, of Crystal Lake, for appellant. |
| **Attorneys for Appellee:** | Patrick D. Kenneally, State's Attorney, of Woodstock (Patrick Delfino, Edward R. Psenicka, and Victoria E. Jozef, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |