2025 IL App (2d) 240638-U
Nos. 2-24-0638 & 2-24-0639 cons.
Order filed April 17, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* INTEREST OF E.T., a minor | ) | Appeal from the Circuit Court |
| | ) | of McHenry County. |
| | ) | |
| | ) | No. 24-JA-32 |
| | ) | |
| | ) | Honorable |
| (People of the State of Illinois, Petitioner- | ) | Cynthia D. Lamb, |
| Appellee, v. Ashlee S., Respondent-Appellant). | ) | Judge Presiding. |

| | | |
|---|---|---|
| *In re* INTEREST OF S.S. and B.S., minors | ) | Appeal from the Circuit Court |
| | ) | of McHenry County. |
| | ) | |
| | ) | Nos. 24-JA-33, 24-JA-34 |
| | ) | |
| | ) | Honorable |
| (People of the State of Illinois, Petitioner- | ) | Cynthia D. Lamb, |
| Appellee, v. Ashlee S., Respondent-Appellant). | ) | Judge Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court.
Presiding Justice Kennedy and Justice Schostok concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court's finding that the minors were neglected was not against the manifest weight of the evidence. Respondent's claim that the trial court erred in finding her unfit is forfeited pursuant to Illinois Supreme Court Rule 341(h)(7).

¶ 2    Respondent appeals from the trial court's October 3, 2024, dispositional order granting the State's petitions for adjudication of wardship regarding the minors S.S., B.S., and E.T. (collectively "the minors"). In this consolidated appeal, respondent contends that the trial court erred in its adjudicatory findings that the minors were neglected pursuant to section 2-3(1) of the Juvenile Court Act of 1987 (705 ILCS 405/2-3(1) (West 2022) (the Act)). Additionally, respondent contends that the trial court erred in its dispositional finding that respondent was unfit for reasons other than financial circumstances alone pursuant to section 2-23 of the Act (705 ILCS 405/2-3(1) (West 2022)). For the reasons that follow, we affirm.

¶ 3                                I. BACKGROUND

¶ 4    On April 22, 2024, the State filed petitions for adjudication of wardship to each respective minor. Relevant here, the State made the following common allegations in each petition.[1] Respondent gave birth to E.T. on April 17, 2024. Respondent tested positive for cannabinoids at the time of E.T.'s delivery. Respondent has a history of substance and abuse and admitted to using tetrahydrocannabinol (THC) and alcohol throughout her pregnancy. On September 22, 2022, she was involved in a domestic dispute with B.S. and S.S.'s father, resulting in a law enforcement response wherein respondent admitted to using unprescribed Xanax. On April 28, 2023, she was involved in car accident with B.S. and S.S. in the vehicle. Respondent was abusing substances at the time of the crash. The accident resulted in serious injuries to both children. Respondent was issued a traffic citation for failure to yield. On June 27, 2023, respondent drove herself, B.S., and

---

[1] Some of the allegations contained in the State's petition regarding E.T. are related to her purported father, Shane T. As this appeal only concerns allegations related to respondent, we will limit our factual recitation accordingly.

S.S. to an office to submit to a drug test. She tested positive for methamphetamines, amphetamines, benzodiazepines, and THC.

¶ 5    On July 15, 2024, the trial court held an adjudicatory hearing on the State's petitions. The State called Denise Kaley, a former DCFS investigator, to testify. Kaley was assigned to investigate a September 28, 2022, incident involving B.S. and S.S. She reported that there was an indicated finding of substantial risk to the children due to a reported domestic incident involving respondent and William S., the children's father.

¶ 6    Officer Ryan Burr, a former Crystal Lake police officer, testified that he was dispatched to a domestic incident on September 28, 2022. Burr spoke with respondent about the incident and recalled her demeanor as "disoriented." Respondent told Burr that she had taken Xanax. Burr's report from the day indicated that the children appeared "clean." William S. was also present and appeared "coherent" and "able-bodied." Based on respondent's demeanor, Burr requested an ambulance. The ambulance arrived and met with respondent, but she was not transported anywhere. No arrests were made or citations issued.

¶ 7    Sharon Rademacher, a child protection specialist with DCFS, testified that she investigated a May 2, 2023, report that respondent was using drugs. Her report was admitted as People's Exhibit 2. The report stated that respondent was involved in a motor vehicle accident on April 28, 2023, due to her being intoxicated. Respondent broke her back and chipped a tooth while B.S. broke her hip and S.S broke her arm because of the accident. Respondent had ongoing substance abuse issues including the use of methamphetamine, Adderall, and cocaine. Respondent was offered intact services but declined. Rademacher testified that she was also involved in the investigation following an April 18, 2024, report that respondent had admitted to using THC while pregnant with E.T.

¶ 8    On cross-examination, Rademacher stated that DCFS did not take protective custody of B.S. and S.S. following the motor vehicle accident. Respondent was offered intact services but declined. A safety plan was implemented but further services were not required following its lapse. Regarding respondent's consumption of THC while pregnant with E.T., Rademacher stated that THC was the only substance revealed to be consumed through her investigation. Rademacher was unaware on any adverse health or medical issues to E.T. as a result of respondent's THC use.

¶ 9    Crystal Lake police officer Joshua Stitt testified that he responded to the April 28, 2023, car accident. He ticketed respondent for failure to yield.

¶ 10    Kara Kugler, an Algonquin police officer, testified that she went to respondent's home on May 2, 2024, to assist DCFS with taking protective custody of E.T. Respondent appeared angry and did not want to relinquish E.T. Eventually, respondent went into her room to pack a bag for E.T. The room smelled of marijuana. Respondent remained very angry and was yelling while frantically packing the bag while holding E.T. At one point, respondent squatted down with E.T. in her arms and, upon attempting to get back up, fell backwards and hit the child's head on an oscillating fan. Respondent finally put E.T. into a baby carrier and surrendered her to DCFS.

¶ 11    Dianca Harper, a child protection specialist with DCFS, testified that she was assigned to take E.T. into protective custody on May 2, 2024. She reiterated the testimony of Officer Kugler regarding respondent's agitated state, the smell of marijuana in her room, and falling into the fan with E.T. Harper noticed a scratch on E.T.'s head after putting her into the baby carrier. She took E.T. to the hospital for evaluation of the injury. On cross-examination, Harper acknowledged that she was never informed of E.T. suffering any severe injury or requiring a follow-up appointment.

¶ 12    The State admitted People's exhibit 5, respondent's medical records following the April 28, 2023, car accident. The records showed that she tested positive for amphetamines,

cannabinoids, and benzodiazepines. The State again referenced People's exhibit 2 which contained a June 27, 2023, DCFS report stating that respondent drove B.S. and S.S. to an agency drug testing office before testing positive for amphetamines, benzodiazepines, and THC. The State also admitted People's exhibit 8, respondent's and E.T's medical records from April 16, 2024, to April 19, 2024, that showed they both tested positive for cannabinoids. A test of the umbilical cord found E.T. was born with cannabinoids and Carboxy-Delta-9-THC in her system at a rate of greater than 1,000 pg/g with the confirmed limit of 50 pg/g.

¶ 13    Respondent testified and denied taking any unprescribed substance on the morning of the April 28, 2023, car accident. She recalled testing positive for Adderall, Xanax, and THC after driving the children to the drug testing site on June 27, 2023. She checked herself into Rosecrance for drug rehabilitation on July 4, 2023. After completing a four-day inpatient program, she was discharged. She then completed a three-week outpatient program recommended by Rosecrance. She then learned she was pregnant with E.T. Respondent denied using any substances during her pregnancy except for cannabis near the time of E.T's delivery.

¶ 14    On September 6, 2024, the trial court issued its written decision finding the minor neglected in that they were in an environment injurious to their welfare as defined by section 2-3(1)(b) of the Act (705 ILCS 405/2-3(1)(b) (West 2022)). The trial court made the following factual findings in support of its adjudicatory decision:

    "[Respondent] has a history of substance misuse which the State proved through credible evidence including, but not limited to, testimony of witnesses, documentation that was admitted into evidence and stipulations received from [William S.] as to certain facts. This history of substance misuse ranged over a time frame from September 28, 2022, through May 2, 2024. First, on or about September 28, 2022, [Respondent's] father, Brian,

reported to police that [respondent] was not doing well regarding her mental state, and it was determined by the officer through admissions by [respondent] that she had taken Xanax which she had not been prescribed. The Officer called for an ambulance, based on [respondent's] condition at that time. The officer testified that [respondent] was not making sense, was incoherent and could not answer simple questions. [B.S] and [S.S] were in the home at the time, albeit with their father, William. Further, on April 28, 2023, [respondent] was in a car accident in which she was driving two of her children, being [B.S] and [S.S]. She was charged with failing to yield while turning left. This was a 5-vehicle accident in which [S.S], [B.S] and [respondent] were seriously injured. [B.S] broke her hip; [S.S] broke her arm and [respondent] broke her back. Once at the hospital the drug screen results showed that [respondent] had amphetamines, cannabinoids and benzodiazepine in her system at that time of the accident. On June 27, 2023, she was driving the [B.S.] and [S.S] to DCFS office where she again tested positive for methamphetamines, amphetamines, benzodiazepines and THC. The minor, [E.T.] was born on April 17, 2024, with cannabinoids and Carboxy-Delta-9-THC in her system that was found in the test of her umbilical cord at a rate of greater than 1000 pg/g when the confirmed limit was 50 pg/g pursuant to the medical records received into evidence. This is 20 times the confirmed limit according to the medical records. Further, on or about May 2, 2024, while DCFS was at the home of [respondent] and observed that the home and the minor, [E.T.], both having the strong odor of cannabis. [Respondent] was upset, yelling while carrying the baby around and packing a bag for the baby, [E.T.]. While [respondent] was in this excited state and holding [E.T.], who was weeks old at the time, [E.T.'s] head hit the fan in the room. After the baby's head hit the fan, [respondent] continued to deny that the fan hit the baby's

head even though both Detective Kugler and DCFS Child Protective Specialist Dionca Harper saw the baby's head hit the fan and there was a scratch mark on the baby's head which was left by the fan, which led the DCFS worker to take the infant to hospital.

Finally, while [respondent's] testimony was guarded and not credible when compared to the other evidence presented, [respondent] admitted in her testimony that she knew that DCFS wanted her to go to detox and counseling, so she admitted herself into detox and then went to 3 weeks of outpatient therapy which were completed by the end of July 2023. [Respondent] found out she was pregnant in the middle of August 2023, only a couple of weeks later. [Respondent] had previously turned down offers from DCFS to obtain counseling regarding her drug misuse, on more than one occasion. In addition, [respondent] admitted that she used THC while she was pregnant with [E.T.] he had gone through detox and counseling for her drug misuse."

¶ 15    On October 3, 2024, the trial court held a dispositional hearing wherein it found respondent unfit and unable to care for, protect, train, educate, and discipline the minors. The minors were made wards of the court. This appeal followed.

¶ 16                                    II. ANALYSIS

¶ 17    Illinois Supreme Court Rule 311(a)(5) (eff. July 1, 2018), requires this court to issue our decision within 150 days of the filing of the notice of appeal unless there has been "good cause shown." Respondent filed her notice of appeal on October 21, 2024. The 150-day period for this court to issue our decision under Rule 311(a)(5) expired on March 20, 2025. However, in examining the record provided to this court, we discovered that it did not contain the petition for adjudication of wardship related to B.S., nor did it contain the admitted exhibits that the trial court relied on in reaching its decision at the adjudication hearing. This court ordered the record to be

supplemented with the aforementioned documents, which was complied with on March 19, 2024. Given the incompleteness of the record and this court's order to supplement, we have good cause for filing our decision beyond the deadline.

¶ 18    In this consolidated appeal, respondent contends that the trial court's factual findings following the adjudication hearing were insufficient for a finding that the minors were neglected pursuant to section 2-3(1)(b) of the Act (705 ILCS 405/2-3(1)(b) (West 2022)). Additionally, respondent contends that the trial court erred in its dispositional order finding her unfit pursuant to section 2-23 of the Act (705 ILCS 405/2-23 (West 2022)).

¶ 19    The Act establishes a two-step process for determining whether a minor should be made a ward of the court: (1) the adjudicatory hearing, where the trial court must decide whether the minor is abused, neglected or dependent; and (2) the dispositional hearing, where, if there has been a finding of abuse, neglect, or dependency, the trial court determines whether it is consistent with the health, safety, and best interests of the minor and the public that the minor be made a ward of the court. *In re Z.L.*, 2021 IL 126931, ¶¶ 58-60.

¶ 20    On a petition alleging that a minor has been neglected, the only question to be resolved at an adjudicatory hearing is whether or not a child is neglected. *Id.* ¶ 59. "[C]ases involving allegations of neglect and adjudication of wardship are *sui generis* and must be decided on the basis of their unique circumstances." *Id.* ¶ 89. "This fact underscores the fact-driven nature of neglect and injurious environment rulings." *Id.* The burden is on the State to prove allegations of abuse or neglect by a preponderance of the evidence; in other words, that "the allegations are more probably true than not." *Id.* ¶ 61. We will not disturb a trial court's finding of abuse, neglect, or dependency unless it is against the manifest weight of the evidence. *In re Aniylah B.*, 2016 IL App

(1st) 153662, ¶ 37. A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident. *Z.L.*, 2021 IL 126931, ¶ 61.

¶ 21 Section 2-3(1)(b) of the Act defines a neglected minor as one "whose environment is injurious to his or her welfare." 705 ILCS 405/2-3(1)(b) (West 2022). Our supreme court has said that "the term 'injurious environment' cannot be 'defined with particularity,' but it includes the breach of a parent's duty to ensure a safe and nurturing shelter for his or her children." *Z.L.*, 2021 IL 126931, ¶ 89 (quoting *In re Arthur H.*, 212 Ill. 2d 441, 463 (2004)). "Simply put, a parent has a duty to keep his or her child free from harm." *In re Angela P.*, 2022 IL App (1st) 211092, ¶ 47.

¶ 22 We begin with respondent's arguments as to the trial court's findings regarding E.T. She first argues that E.T.'s positive test for cannabinoids, without evidence of THC's risk of harm or that E.T. was adversely affected, was not sufficient grounds for a finding of neglect. Respondent relies on this court's decision in *In re D.A.*, 2022 IL App (2d) 210676, to support this argument. Respondent asserts that this court in D.A. established that the State must show that (1) the baby was born with THC in its system; *and* (2) the use of THC while pregnant poses risk to the newborn child.

¶ 23 In *In re D.A.*, the State alleged that the minor's environment was injurious to his welfare, in part because he tested positive at birth for THC. *Id.* ¶ 3. At the adjudication hearing, a caseworker testified that both parents used marijuana daily but also acknowledged that THC is legal and that there " 'really is not enough evidence to show how it affects babies.' " *Id.* ¶ 5. This court found that the State did not establish neglect by a preponderance of the evidence, as it "did not meet its burden of proving that D.A. was born with THC in his system *or* that the use of marijuana during pregnancy poses risks to the unborn child." *Id.* ¶ 15. (Emphasis added.)

¶ 24    This court's holding in *In re D.A.* does not require proof that the use of marijuana during pregnancy poses risks to the unborn child. Our holding requires the trial court to base its findings on more evidence than just testimony or the presence of THC at birth. In the present case, the trial court did not solely rely on the fact that respondent admitted to the use of cannabis while pregnant with E.T., but also on medical records that indicated that E.T. was born with 20 times the confirmed legal limit of Carboxy-Delta-9-THC in her system. The trial court's finding of neglect regarding the presence of cannabinoids in her system is not at odds with this court's holding in *In re D.A.* and was not against the manifest weight of the evidence.

¶ 25    Respondent further argues that her history of substance-related incidents with B.S. and S.S. were insufficient to support the trial court's finding that she created an injurious environment and demonstrated anticipatory neglect of E.T.

¶ 26    Under the anticipatory neglect theory, the State seeks to protect not only children who are the direct victims of neglect or abuse, but also those who have a probability to be subject to neglect or abuse because they reside, or in the future may reside, with an individual who has been found to have neglected or abused another child. *In re Arthur H.*, 212 Ill. 2d 441, 468 (2004). The theory of anticipatory neglect flows from the concept of an "injurious environment" which is set forth in the Act. *Id.* Anticipatory neglect should be measured not only by the circumstances surrounding the sibling, but also by the care and condition of the child in question. *Id.* Although section 2–18(3) of the Act (705 ILCS 405/2–18(3) (West 2022)) provides that the proof of neglect of one minor shall be admissible evidence on the issue of the neglect of any other minor for whom the parent is responsible, the mere admissibility of evidence does not constitute conclusive proof of the neglect of another minor. Each case concerning the adjudication of minors, including those

cases pursued under a theory of anticipatory neglect based upon the neglect of a child's sibling, must be reviewed according to its own facts. *Id*. at 468-69.

¶ 27    Respondent cites to *In re Edricka C.*, 276 Ill. App. 3d 18 (1995), for her argument on the insufficiency of the evidence to support a finding of anticipatory neglect of E.T. In that case, petitions for adjudication of wardship were filed for minors Edricka C., born in 1992, and Zemaj C., born in 1991, based on allegations that the mother did not seek proper medical treatment for Edricka. At trial, the State offered evidence relating to two prior encounters with DCFS in 1987 and 1989. The 1987 case involved allegations that the parents severely beat their oldest child, while the 1989 case arose when a fire broke out in the apartment building where the mother's other five children were left unsupervised. At the time of the hearing, the mother had supervised visits with her oldest child and unsupervised visits with the other children. The DCFS employee, who had been involved with the mother's family from 1990 until 1993, acknowledged that Edricka and Zemaj had lived with their mother without incident until the filing of the petitions and she had not previously brought the subject minors into court because she did not believe they were at risk. *In re Edricka C.,* 276 Ill. App. 3d at 20–21. The trial court entered findings of " 'neglect care necessary, environment injurious, and substantial risk of physical injury' " for both minors based on the theory of anticipatory neglect. *Id.* at 24. "The court explained that even though these minors were originally brought before it on medical neglect allegations, 'the court cannot ignore the prior history of this mother and father with their children and dismiss petitions on these two infants.' " *Id.* at 24–25.

¶ 28    On appeal, the reviewing court reversed the trial court's findings. The court found that under the circumstances of the case, "evidence of past sibling abuse is admissible, but, by itself, insufficient to show that abuse and neglect are imminent" for Edricka because the record showed

that Edricka had been in perfect health, the mother sought and completed counseling services, the DCFS employee testified that the minors were not at risk, and the mother had begun parenting classes. *Id.* at 29–30. The appellate court made similar findings for Zemaj and noted that "the trial court's findings concerning Zemaj come too close to a *per se* rule of anticipatory neglect." *Id.* at 31.

¶ 29    Unlike in *Edricka C.*, respondent's actions in the present case are not in the distant past. As the trial court found, respondent's "history of substance misuse is not situational or transitory but is clearly pervasive and ongoing[.]" E.T. was born with cannabinoids in her system less than two years after respondent was impaired during the September 2022 incident with Crystal Lake police. E.T.'s birth was less than one year after respondent was operating a vehicle while impaired that led to an accident that severely injured B.S. and S.S. E.T.'s birth was less than one year after respondent tested positive for methamphetamines, amphetamines, benzodiazepines and THC. She admitted to using THC while pregnant with E.T. When DCFS took custody of E.T., respondent's room smelled of marijuana. The evidence clearly showed that respondent has an ongoing problem with drug abuse and the trial court's finding that E.T. was neglected was not against the manifest weight of the evidence.

¶ 30    Before moving to respondent's arguments concerning B.S. and S.S., we must address her argument that the incident wherein E.T.'s head hit an oscillating fan was insufficient evidence of an injurious environment. As noted above, the State elicited testimony that respondent was visibly upset while packing E.T.'s belongings after DCFS arrived at her home to take protective custody. While the evidence is unrebutted that respondent subsequently fell into the fan while holding E.T., there was no evidence that E.T. was actually injured because of this incident, nor was there evidence that respondent physically abused the child. Without such evidence, the trial court's

reliance on this incident as evidence of an injurious environment was error. See *In re C.R.*, 191 Ill. 2d 338, 353 (2000) (a display of temper not directed to the children or another member of the household does not indicate that the children lived in an environment that exposed them to, or threatened then with, emotional or physical injury). However, considering the foregoing analysis, this error was harmless as the trial court's reliance on her ongoing substance abuse supports the finding that E.T. was neglected pursuant to section 2-3(1)(b) of the Act (705 ILCS 405/2-3(1)(b) (West 2022)) and was not against the manifest weight of the evidence

¶ 31    Turning to respondent's arguments regarding B.S. and S.S, she asserts that no evidence was presented that she has ever placed them at risk of physical harm or that her THC use has adversely affected them. Most of the arguments raised by respondent regarding B.S. and S.S. overlap those she makes with respect to E.T. Without belaboring the points raised above, we disagree with respondent.

¶ 32    The State's petitions for adjudication of wardship of B.S. and S.S. alleged that they were neglected minors due to an injurious environment caused by respondent testing positive for THC at the time of E.T.'s birth, and respondent's history of a drug abuse which resulted in severe injuries to B.S. and S.S. The evidence presented supported the trial court's finding that B.S. and S.S. were neglected due to the injurious environment. Respondent's history of drug abuse was a direct cause leading to the car accident that injured the children, and E.T. was indeed born with 20 times the confirmed legal limit of Carboxy-Delta-9-THC in her system. Additionally, the evidence showed that respondent drove the children to an office to submit to a drug test where she tested positive for methamphetamines, amphetamines, benzodiazepines, and THC, less than a year before E.T. was born. The trial court's finding that B.S. and S.S. were neglected pursuant to section 2-3(1)(b)

of the Act (705 ILCS 405/2-3(1)(b) (West 2022)) and was not against the manifest weight of the evidence.

¶ 33　　Finally, respondent contends that the trial court's dispositional order finding her unfit pursuant to section 2-23 of the Act (705 ILCS 405/2-23 (West 2022)) was made in error. However, she fails to support this contention with any relevant authority. For that reason alone, this contention is subject to forfeiture under Illinois Supreme Court Rule 341(h)(7). See IL S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). But beyond forfeiture, the record shows that respondent's trial counsel admitted to her unfitness to parent the minors. Regarding B.S. and S.S., respondent's counsel stated at the dispositional hearing that respondent "is willing and she is able at this time as far as caring for the girls, but unfit due to the outstanding services at this moment. Regarding E.T., respondent's counsel stated that he agreed with the State's assertion that she was unfit. Respondent cannot be allowed to complain of error that she induced the court to make or to which she consented. *In re E.S.*, 324 Ill. App. 3d 661, 670 (2001). As such, we will not disturb the trial court's dispositional order.

¶ 34　　　　　　　　　　　　　III. CONCLUSION

¶ 35　　Based on the foregoing, we affirm the judgment of the circuit court of McHenry County.

¶ 36　　Affirmed.